# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Richard J. M.,                                                    No. 19-cv-827 (KMM)

      Plaintiff,

v.

                                         **ORDER**

Kilolo Kijakazi, Acting Commissioner of
Social Security,

      Defendant.

      Richard M.[1] appeals the denial of his application for disability benefits by the Social Security Administration ("SSA" or "Agency"). He argues that the Agency's decision must be reversed because the unfavorable decision from the Administrative Law Judge ("ALJ") assigned to his case was not supported by substantial evidence and contained reversible legal errors. Mr. M also argues that the ALJ lacked the authority to decide his case under the Federal Vacancies Reform Act ("FVRA") and the Appointments Clause of the United States Constitution. The Defendant[2] disputes Mr. M's claim, both on the merits and on the issue of the ALJ's authority to adjudicate his application. For the reasons that follow, the Court concludes that the ALJ was not properly appointed and lacked the authority to decide Mr. M's disability claim. Consequently, Mr. M's motion for summary judgment is granted,

---

[1]     The Court refers to Richard M. as "Plaintiff" or "Mr. M" throughout this Order, consistent with District practice, to protect Mr. M's privacy.

[2]     The Defendant in this case, Kilolo Kijakazi, is currently serving as the Acting Commissioner of Social Security. Because this opinion also addresses former Acting Commissioner of Social Security Nancy Berryhill, the Court will differentiate between the two whenever necessary.

the Agency's decision is vacated, and this matter is remanded to the Agency for a decision before a properly appointed ALJ.[3]

## I.     The Appointments Clause and the FVRA

The Court's analysis begins with the United States Constitution's Appointments Clause and the congressional effort, through the FVRA, to address problems that arise when the head offices of executive agencies are left vacant. The Appointments Clause states:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. This language serves at least two purposes—pragmatically, it assists the functioning of the Executive Branch by allowing subordinate officers to exercise executive authority, and structurally, it maintains a degree of accountability for both the President and the Senate. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1978–79 (2021) (observing that the Framers recognized that the President alone could not be responsible for every action of the Executive Branch and that the Appointments Clause "guarantees accountability" for the President for bad appointments and "adds a degree of accountability in the Senate" for confirming bad appointments and rejecting good ones); *see also Brian D.*,

---

[3]    As explained in more detail below, in another case from this district, the Honorable David T. Schultz, United States Magistrate Judge, interpreted the relevant provisions of the Federal Vacancies Reform Act in the same manner. *Brian D. v. Kijakazi*, No. 19-cv-2542 (DTS), __ F. Supp. 3d __, 2022 WL 179540 (D. Minn. Jan. 20, 2022).

2022 WL 179540, at *2 (discussing the background and purpose of the Appointments Clause).

The Appointments Clause prescribes "the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. Sec. and Exchange Comm'n*, 138 S. Ct. 2044, 2049 (2018). The Clause "distinguishes between two kinds of officers." *Seila Law LLC v. Consumer Fin. Prot. Bur.*, 140 S. Ct. 2183, 2199 n.3 (2020). The first kind are "principal officers," who must be appointed by the President with the advice and consent of the Senate. *Id.* These are often referred to as PAS appointments or PAS officers. *See Nat'l Labor Relations Bd. v. SW General, Inc.*, 137 S. Ct. 929, 934 (2017) (hereafter "*SW General*"). The second consists of "inferior officers," who can also be appointed by the President with the advice and consent of the Senate, but "whose appointment Congress may vest in the President, courts, or heads of Departments." *Seila Law LLC*, 140 S. Ct. at 2199 n.3; *see also Edmond v. United States*, 520 U.S. 651, 659 (1997) (same); *United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020) (same).

The process for making PAS appointments is not always a smooth one and can result in vacant PAS offices. As the Supreme Court has explained, Congress has tried to address this problem statutorily. "The President may not promptly settle on a nominee to fill an office; the Senate may be unable, or unwilling, to speedily confirm the nominee once submitted. Yet neither may desire to see the duties of the vacant office go unperformed in the interim." *SW General*, 137 S. Ct. at 935. As a result, "Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant PAS office without first obtaining Senate approval." *Id.* As early as 1792, and again with the

Vacancies Act of 1868, Congress has long provided a vehicle for the President to temporarily fill PAS offices with acting officers. *Id.* at 935–36. But in the modern era, an increasing percentage of PAS offices were occupied by temporary appointments, many of whom served beyond the time limitations established by Congress—this reality raised concerns about "the Senate's advice and consent power." *Id.* at 936. Thus in 1998, "Congress acted again, [replacing] the Vacancies Act with the FVRA." *Id.*

"Section 3345(a) of the FVRA permits three categories of Government officials to perform acting service in a vacant PAS office." *Id.* If a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office . . . the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." *Id.* In this circumstance, the first assistant's acting status happens automatically when the vacancy arises. "Alternatively, the President may direct either a senior official of that agency or a person in any other advice and consent position to serve as the acting officer." Valerie C. Brannon, Cong. Research Serv. R44997, *The Vacancies Act: A Legal Overview* (2018) (Summary), https://crsreports.congress.gov/product/pdf/R/R44997/13 (last visited March 30, 2022). Such acting officer appointments are also "subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(2)–(3).

The FVRA not only clarifies who can act as an agency head, but also contains limitations on how long an acting officer can serve. The temporal limitation is established in 5 U.S.C. § 3346(a), which provides:

(a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office--

(1) for no longer than 210 days beginning on the date the vacancy occurs; or

(2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C. § 3346(a). When the President nominates a candidate, an acting PAS appointment might last longer than the 210-day limit because the person serving as an acting department head may continue serving while the nomination is pending. *Id.* § 3346(a)(2). Of course, once such a nomination is confirmed by the Senate, there is no longer a vacancy, and acting service is no longer necessary.

But nominations do not always result in the nominee filling the PAS office. If the Senate rejects the nominee, the President withdraws the nomination, or the Senate fails to act and the nomination is returned, the person serving as an acting officer "may continue to serve" in that role "for no more than 210 days after the date of such rejection, withdrawal, or return." *Id.* § 3346(b)(1). The same 210-day extension of acting service applies if the President makes a second unsuccessful nomination. *Id.* § 3346(b)(2). The procedural history of this case gives rise to the following question: if an acting official's 210-day period of service expires, and the President nominates another for the PAS office, does the FVRA allow the acting official to resume another period of acting service while the nomination is pending?

## II.     Procedural History

Mr. M applied for disability benefits in April 2015. The Agency denied his application, and Mr. M requested a hearing before an ALJ. ALJ David Hebert ("ALJ

Hebert") was assigned to Mr. M's case, held a hearing on July 30, 2018, and issued a written decision denying the claim on August 21, 2018. Because the Agency's Appeals Council declined further review, ALJ Hebert's decision became the final decision of the Agency, and Mr. M filed this lawsuit on March 24, 2019.

### *Lucia v. SEC*

Before Mr. M's hearing in July of 2018, the Supreme Court decided *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018). The *Lucia* Court held that Securities and Exchange Commission ("SEC") ALJs, who presided over federal-securities-law enforcement proceedings, are "Officers of the United States" within the meaning of the Appointments Clause, and therefore, had to be appointed by the President, a court of law, or the department head. *Id.* at 2053–54. The SEC ALJ who decided the enforcement proceeding involving Mr. Lucia had not been appointed by any of those methods. *Id.* at 2051 & n.3. The Court concluded that Mr. Lucia was entitled to a new hearing before a properly appointed official, and that official needed to be someone other than the SEC ALJ who had originally ruled against him. *Id.* at 2055.

### Nancy Berryhill's Tenure As Acting Commissioner

When the Supreme Court decided *Lucia*, Nancy Berryhill was the highest-ranking official in the SSA as the Deputy Commissioner for Operations ("DCO"). Ms. Berryhill originally took on the role of Acting Commissioner of the Agency on January 21, 2017, the day after former President Donald J. Trump took the oath of office. Ms. Berryhill came to that role through an order of succession issued by former President Barrack Obama in December 2016. *Memorandum Providing an Order of Succession Within the Social Security*

*Administration*, 81 Fed. Reg. 96337, 2016 WL 7487744 (Dec. 23, 2016) ("Succession Memo").

The 2016 Succession Memo provided that if the office of Commissioner and Deputy

Commissioner of the Agency were both vacant, the DCO would be first in line to be the

Acting Commissioner. At the time of President Trump's inauguration, the office of the

Commissioner was vacant, and Deputy Commissioner Carolyn Colvin had been the Acting

Commissioner. Ms. Colvin resigned on January 20, 2017, and Ms. Beryhill ascended to the

Acting Commissioner role the following day pursuant to the Succession Memo.

In March 2018, the Government Accountability Office ("GAO") concluded that

Ms. Berryhill's period of valid service as Acting Commissioner under the FVRA expired on

November 16, 2017.[4] *See* U.S. Government Accountability Office, Violation of the Time

Limit Imposed by the Federal Vacancies Reform Act of 1988 -- Commissioner, Social

Security Administration, p.2 (Mar. 6, 2018),

https://www.gao.gov/products/D18772#mt=e-report, B-329853 ("GAO Report") (last

visited March 30, 2022).[5] President Trump did not nominate anyone to serve as

Commissioner of the SSA between his inauguration and November 16, 2017, so the GAO

concluded that Ms. Berryhill's acting service between November 16, 2017 and March 6, 2018

violated the FVRA. *Id.*

---

[4]     November 16, 2017 is 300 days from January 21, 2017; although that is 90 days more
than the 210-day period, that 90-day extension is provided in 5 U.S.C. § 3349a(b) for
circumstances where a vacancy arises at the beginning of a new President's term.

[5]     Although the GAO website refers to the "Federal Vacancies Reform Act of 1988" in
the title on this webpage, the GAO's letter correctly identifies 1998 as the year of the
FVRA's passage. The webpage provides a link to a .pdf file copy of the GAO's letter.

**Andrew Saul's Nomination**

After the GAO's March 2018 notice, Ms. Berryhill stepped down as Acting Commissioner, and resumed her role as DCO, from which she performed the Commissioner's delegable functions and duties. *Id.*; *see also* Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 634 (2020) ("After the GAO notified Berryhill of her noncompliance with the [FVRA], she stepped down as 'acting Commissioner' of the SSA. She continued to perform the same role as before, but without the acting title. . . ."). Then, on April 17, 2018, former President Trump nominated Andrew Saul to serve as Commissioner of the Agency. Upon Mr. Saul's nomination, "Berryhill purportedly then resumed her service as Acting Commissioner until Saul took office in June 17, 2019." *Brian D.*, 2022 WL 179540, at *4.

**Ratification of Social Security ALJ Appointments**

After the June 21, 2018 decision in *Lucia*, concerns arose that ALJs within the SSA were subject to the Appointments Clause and, just like the SEC ALJ in *Lucia*, had not been properly appointed by the President, a court of law, or the head of the SSA. Ms. Berryhill responded to this concern on July 16, 2018, when she issued an Agency-wide ratification and reappointment.

> To address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of [the Agency's] ALJs and approved those appointments as her own.

Social Security Ruling 19-1p, Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* On Cases Pending at the Appeals Council, 84 Fed. Reg. 9582-02 (Mar. 15, 2019) ("SSR 19-1"). As mentioned above, ALJ Hebert held Mr. M's hearing on

July 30, 2018, and issued his decision not long thereafter. As was the situation with the

claimant in *Brian D.*, because the hearing and decision post-dated Ms. Berryhill's ratification,

the question here is whether ALJ Hebert's "appointment was proper at the time [he] heard

and decided [Mr. M's] case." *Brian D.*, 2022 WL 179540, at *5 n.7.

### These Proceedings and *Carr v. Saul*

In the Complaint initiating this lawsuit, Mr. M alleged:

> Following Lucia v. SEC, ___ U.S. ___, 138 S. Ct. 2044 (June 21, 2018),
> the ALJ's decision should be vacated and Plaintiff's claim be remanded for a
> new hearing before a new ALJ, as the ALJ that decided Plaintiff's claim was an
> inferior officer not appointed by a department head or the President.

Compl. ¶ 15, ECF No. 1. In his initial summary-judgment brief, Mr. M argued that the ALJ's

appointment did not comply with the Appointments Clause, and in anticipation of the

Agency's response, he asserted that he had neither waived nor forfeited this issue despite

raising it for the first time in federal court. Pl.'s Mem. at 28–34, ECF No. 14. In response,

the Agency conceded, for purposes of this litigation, that SSA ALJs are "inferior officers"

within the meaning of the Appointments Clause. Def.'s Mem. at 23 n.14, ECF No. 17.

Nevertheless, as Mr. M anticipated, the Agency argued that Mr. M forfeited the

Appointments Clause challenge by failing to present it during administrative proceedings. *Id.*

at 20–33. Though not the focus of its argument, the Agency also referenced Ms. Berryhill's

July 16, 2018 ratification of the appointments of SSA ALJs. *Id.* at 23 n.14.

As this briefing was submitted in August and September of 2019, district courts

within the Eighth Circuit and elsewhere were grappling with the same forfeiture question in

other cases. As a result, after seeking input from the parties, the Court stayed Mr. M's case

pending the outcome of consolidated appeals on the forfeiture issue that were then pending

before the Eighth Circuit. ECF No. 22. On July 7, 2020, the Agency advised the Court that

the Eighth Circuit issued a decision in *Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020), holding

that a claimant who failed to raise an Appointments Clause challenge during his

administrative proceedings could not raise it for the first time in district court. ECF No. 23.

This Court kept the stay of this litigation in place pending the outcome of the plaintiffs'

appeal of the *Davis* decision to the Supreme Court. On November 9, 2020, the Supreme

Court granted certiorari to resolve a circuit split on the forfeiture issue.

On April 22, 2021, the Supreme Court held that a Social Security claimant may raise

an Appointments Clause claim for the first time in federal court. *Carr v. Saul*, 141 S. Ct. 1352

(2021). After the decision in *Carr*, Mr. M asked the Court to vacate the Agency's denial of his

disability claim and remand his case to the Agency for further proceedings before a properly

appointed ALJ. ECF No. 28. This Court sought a response from the Agency concerning the

impact of *Carr* on these proceedings and lifted the stay. ECF Nos. 29, 30. Although in other

pending cases where claimants had raised Appointments Clause challenges the Agency had

agreed to a remand after *Carr*,[6] it took the position that *Carr* does not control Mr. M's case.

The Agency reiterated its position that Ms. Berryhill's July 16, 2018 ratification of the

Agency's ALJs cured any constitutional problem. The Agency further argued that

Ms. Berryhill had the authority to reappoint the ALJs under the Federal Vacancies Reform

Act. ECF No. 31.

---

[6]     For example, in *Norva X v. Saul*, No. 19-cv-1081, Doc. No. 32 (D. Minn. May 7,
2021), the Agency agreed to a remand. The ALJ in *Norva X.* had held a hearing on June 25,
2018, just under a month before then Ms. Berryhill's ratification.

In additional supplemental briefing Mr. M asserted that the Agency waived any argument that ALJ Hebert had been properly appointed by Ms. Berryhill under the FVRA and repeated his contention that ALJ Hebert could not constitutionally decide his disability claim. ECF No. 33. The Agency then submitted its most thorough memorandum on the statutory and constitutional issues on August 19, 2021, briefing that was substantially similar to the Agency's arguments in *Brian D*. ECF No. 39. Mr. M responded, explicitly adopting or incorporating by reference the claimant's briefing from *Brian D*. ECF No. 40, 41.

## III.   Discussion

The parties' positions on the validity of ALJ Hebert's appointment can be summarized as follows. The Agency argues that under the FVRA, Ms. Berryhill was properly serving as the acting head of the SSA because Mr. Saul's nomination allowed her to resume such service while that nomination was pending. And the Agency contends that Ms. Berryhill's ratification of the SSA ALJs was entirely consistent with the Appointments Clause. Mr. M first argues that the Agency waived or forfeited any right to argue that Ms. Berryhill's reappointment was an effective and appropriate means to appoint ALJ Hebert. Mr. M also asserts that Ms. Berryhill's ratification of the ALJs violated the FVRA because her valid period for acting service had expired, and Mr. Saul's nomination could not revive it. He further argues that an acting head of a department cannot appoint other inferior officers, such as the SSA ALJs, so Ms. Berryhill's purported ratification failed in any event. Finally, Mr. M argues that if the FVRA allowed Ms. Berryhill to ratify the appointments of the Agency's ALJs, given the length of time she served in that role and the absence of any exigent circumstances, such acting service violated the Appointments Clause.

The Court concludes that on July 16, 2018, Ms. Berryhill was not statutorily

authorized under the FVRA to ratify the appointments of the Agency's ALJs.[7] Consequently,

ALJ Hebert was not properly appointed, lacked authority to render a decision in Mr. M's

administrative proceeding, and this manner must be remanded back to the Agency for

further proceedings. Unfortunately, as the discussion of the procedural history of this case

above reveals, Mr. M has been waiting an extraordinarily long time for his disability claim to

be finally resolved. It has now been more than seven years since the alleged onset date of

disability, and nearly three years since he filed his complaint in this case. Though it is in his

favor, the consequence of the Court's ruling today is that Mr. M necessarily will have to wait

longer for finality.

###    A.    The 2016 Succession Memo and the FVRA

Mr. M first argues that the 2016 Succession Memo pursuant to which Ms. B became

Acting Commissioner violated the FVRA.[8] The argument begins with the FVRA's proviso

that "the President (and only the President) may direct an officer or employee of such

Executive agency to perform the functions and duties of the vacant office temporarily in an

---

[7]    Because the Court reaches this conclusion, it declines to address Mr. M's contention
that the Agency waived or forfeited any reliance on Berryhill's purported ratification. ECF
No. 33 at 1–3. The Court also offers no opinion on whether Ms. Berryhill's ratification was
consistent with the Appointments Clause. And the Court does not address Mr. M's
alternative argument that even if Ms. Berryhill were properly serving as an acting head of the
SSA at the time of her purported ratification under the FVRA, she was an inferior officer
and, therefore, lacked the authority to appoint the Agency's ALJs, who are also inferior
officers. ECF No. 33 at 3–12.

[8]    Although not featured prominently in his briefing in this case, Mr. M asked the Court
to consider the arguments raised by the claimant in *Brian D. v. Kijakazi*, No. 19-cv-2542
(DTS) (D. Minn.), and the validity of the 2016 Succession Memo was addressed in that case.

acting capacity, subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(3).

Ms. Berryhill, the argument goes, first came to serve as the Acting Commissioner pursuant

to the 2016 Succession Memo issued by former President Obama. However, the vacancy in

that PAS office did not arise until January 21, 2017. At that time, President Trump, not

President Obama, occupied the Office of the President. Following Carolyn Colvin's

resignation when President Trump took office, he never explicitly instructed Ms. Berryhill to

serve as the acting head of the SSA. Nor did he sign a new succession order with the same

provisions as the 2016 Succession Memo. Thus, focusing on the definite article "the" in the

FVRA's reference to "the President," the claimant in *Brian D.* contends that former

President Trump never "directed" Berryhill to serve as an acting department head. *See Brian

D.*, No. 19-cv-2542 (DTS), Doc. 51 at 32–35 (D. Minn. Aug. 28, 2021); *id.*, Doc. 62 at 21–27

(D. Minn. Oct. 25, 2021).

Like Judge Schultz, the undersigned "assumes without deciding, that the fact that

President Trump did not repeal President Obama's Succession Memo or appoint someone

else as Acting Commissioner is an act sufficient to satisfy the FVRA's requirement that he

'direct' Berryhill's service." *Brian D.*, 2022 WL 179540, at *10.

## B.     Statutory Interpretation

The FVRA plainly imposes limits on the length of acting service permitted. Such

service is limited to "210 days beginning on the date the vacancy occurs." 5 U.S.C.

§ 3346(a)(1). However, the period of acting service may be longer if a nomination is pending.

*Id.* § 3345(a)(2). The parties disagree about whether an individual who has served as an acting

PAS officer for the full 210-day period allowed under § 3345(a)(1) (or the 300-day period

allowed by § 3349a(b)) may, pursuant to § 3345(a)(2), resume such service during the pendency of a subsequent nomination. Mr. M argues that § 3345 does not authorize such a resumption of service. He asserts that § 3345(a) authorizes either a single 210-day period *or* a longer, single period of service if the President makes a nomination during that initial period. According to Mr. M's reading of the statute, Ms. Berryhill's statutorily authorized period of acting service ended on November 16, 2017, and she could not start a new period of acting service under § 3345(a)(2) when President Trump nominated Andrew Saul to be the next Commissioner of the SSA in April 2018. As a result, Ms. Berryhill's purported ratification of the Agency's ALJs on July 16, 2018, violated the FVRA.

In its briefing in this case, the Agency did not advance each of the arguments that it raised in *Brian D.* in favor of its "spring-back" interpretation of § 3346(a)(2). Here, the Agency simply assumed that Ms. Berryhill had the authority to serve as acting head of the SSA, an assumption which depends upon the position that her service at that time was consistent with the FVRA's provisions. However, given Mr. M's incorporation by reference of the claimant's arguments from *Brian D.* at a relatively late stage in the briefing in this case, the Court will assume that the Agency takes the same position with respect to the statutory provisions that it took in the *Brian D.* matter.[9]

The Agency's overarching position on the operation of the FVRA is that § 3345(a)(2) acts as a "spring back" provision. Under this reading, an official like Ms. Berryhill, whose

---

[9] The Court notes that at no time did the Agency oppose Mr. M's incorporation of the arguments from the *Brian D.* case. Nor did the Agency seek leave to submit additional briefing on those issues, either before or after the *Brian D.* decision.

initial 210-day (or 300-day) period of acting service expires, will spring back into valid acting service as department head even when a nomination to the PAS office is made after more than 210 days has elapsed. The Court does not agree with this reading. Like the *Brian D.* court, this Court concludes that § 3345(a)(2) did not authorize Ms. Berryhill to resume acting service upon President Trump's nomination of Mr. Saul, that her ratification of the Agency's ALJs in July 2018 was therefore ineffective, and that the proper remedy in this case is for Mr. M to receive a new hearing before a properly appointed ALJ other than ALJ Hebert.

### 1. The Agency-Specific Vacancy Statute

It is important to note that another statute exists which could play some role in questions of succession and appointment: the Social Security Act itself. The agency-specific statute provides that when the Commissioner position is vacant, the Deputy Commissioner "shall be Acting Commissioner . . . unless the President designates another officer of the Government as Acting Commissioner." 42 U.S.C. § 902(b)(4). Because of this provision, "the FVRA is no longer the 'exclusive' means, but rather is 'a means' of selecting a person to serve in an acting capacity for a vacant PAS office." *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 953 (D. Md. Sept. 11, 2020). However, like the *Brian D.* court, this Court also assumes without deciding that Ms. Berryhill served as Acting Commissioner pursuant to the FVRA, and not the Social Security Act's alternative provision concerning acting service when a vacancy arises in the office of the Commissioner. *Brian D.*, 2022 WL 178540, at *8 (discussing 42 U.S.C. § 902(b)(4)); *see also* Succession Memo, 81 F.R. at 96337 (citing the FVRA).

The record before the Court, like that in *Brian D.*, provides no basis for a finding that Ms. Berryhill's acting service was authorized under this agency-specific statute. *Brian D.*, 2022 WL 178540, at \*8. And in neither this case nor *Brian D.* did the Agency ever suggest that Ms. Berryhill's appointment as the Acting Commissioner was valid under the SSA itself. Accordingly, the undersigned finds it appropriate to assume without deciding that Ms. Berryhill's service as Acting Commissioner was never pursuant to section 902(b)(4).

The Court notes that this assumption is consistent with a recent opinion from the Comptroller General addressing the authority of the current Acting Commissioner for the SSA. There, the general counsel for the Comptroller General concludes that because President Biden designated Dr. Kijakazi pursuant to 42 U.S.C. § 902(b)(4), and not the FVRA, the time limits of 5 U.S.C. § 3346 do not apply to Dr. Kijakazi's service. Further, the Comptroller General concludes that this difference in statutory authority distinguishes its position regarding Dr. Kijakazi's ongoing service from the circumstances that led to the 2018 GAO Report that Ms. Berryhill's acting service violated the FVRA's time limits. *Matter of: Soc. Sec. Admin.--Legality of Serv. of Acting Comm'r*, B-333543, 2022 WL 326059, at \*4–5 (Feb. 1, 2022) ("[U]nlike Dr. Kijakazi, Ms. Berryhill was serving under the provisions of the Vacancies Act.").

### 2.    Section 3346's Time Limits

Because this case presents an issue of statutory interpretation, we must begin with the plain language of the statute. *Brian D.*, 2022 WL 179540, at \*9 (citing *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806–07 (8th Cir. 2021)). The plain meaning of a statute may become clear when a court reads "all parts of the same statute

together and give[s] full effect to each part." *Center for Special Needs Trust Admin., Inc. v. Olson*, 676 F.3d 688, 702 (8th Cir. 2012); *Brian D.*, 2022 WL 179540, at *9 (same). Courts properly rely on the statute's use of a particular verb tense when determining the meaning of congressional language. *Brian D.*, 2022 WL 179540, at *11 (citing *Carr v. U.S.*, 560 U.S. 438, 447 (2010)).

With these principles in mind in *Brian D.*, Judge Schultz persuasively reasoned that the plain meaning of § 3346 becomes clear when its language is read alongside other provisions within the FVRA. *Brian D.*, 2022 WL 179540 at *10–12. Congress's use of "serving," rather than "served" or "has served," in § 3346 indicates that it "applies to the person presently serving [as an acting officer] and not to a person who had previously served as Acting Commissioner." *Id.* at *11. When Mr. Saul was nominated, Ms. Berryhill was not serving as Acting Commissioner of the SSA because her period serving as an acting officer under § 3346(a)(1) expired on November 16, 2017. Therefore, the Court finds that section 3346(a)(2) "does not apply to Berryhill because she was not serving as Acting Commissioner when Saul was nominated." *Id.*

The "structure and context" of § 3346 further supports this understanding of subsection (a)(2). *Id.* (citing *Carr*, 560 U.S. at 449). Subsections (b)(1) and (b)(2) permit a person serving as acting officer to "continue to serve." As the *Brian D.* opinion observed, "the use of the present participle is deliberate—only a person presently serving may continue to serve." *Id.* The plain language of § 3346(a)(2) applies to a person presently serving as Acting Commissioner if someone is in fact serving in such a role at the time of the nomination. "When Saul was nominated, no one was performing the functions and duties of

the Commissioner under the FVRA," and under § 3348(b)(1), the PAS office was required to remain vacant. *Id.* at *12.

The Court also agrees with the *Brian D.* court's observation that the statute, as interpreted above, "provides an incentive for prompt appointment of an Acting Commissioner," and the fact that the acting officer may only serve for a limited time "provides the incentive for prompt nomination." *Id.* Section 3346(a)(2) only extends the initial period of service if a nominee is named during the initial 210-day period. As Judge Schultz eloquently explained: "In short, § 3346 sets a single time limitation on the term an acting officer may serve but tolls that period of service if the President promptly nominates a permanent replacement." *Id.*

The Court does not find any of the arguments the Agency put forth in support of its "spring-back" interpretation of § 3346(a)(2) to be more persuasive than this straightforward statutory analysis. *See Brian D.*, 2022 WL 179540, at *13–16. For example, the Court finds that the use of the term "or" to separate subsection 3346(a)(1) from subsection (a)(2) does not create two separate and distinct periods of service, but instead supports Mr. M's reading of the statute. *Id.* at *13 ("The plain reading and ordinary usage of the word 'or' in § 3346(a) is that a person serving as Acting Commissioner may serve for a 210-day period from the start of the vacancy, or if the person is already 'serving as acting officer' according to the FVRA, may continue serving during the pendency of a timely nomination. The 210-day period is a limitation on Berryhill's acting service and after the 210-day limitation had expired, she could not later return to acting service, turning § 3346's 'or' into an 'and.'").

In addition, the Court is not persuaded by a 1999 Memorandum Opinion from the Office of Legal Counsel, which proposes the "spring back" interpretation of the FVRA's time limits. This Court's review of the OLC Opinion leads it to conclude that it "engaged in no analysis and made only conclusory statements" concerning the FVRA's purported incorporation of a "spring-back provision." *Brian D.*, 2022 WL 179540, at *13 (quoting 23 Op. O.L.C. 60, 68, 1999 WL 1262050 (Mar. 22, 1999)). The same is true of a 2015 letter from General Counsel of the Comptroller General to the President concerning a violation of the FVRA at the Department of Veterans Affairs. *Violation of the 210-Day Limit Imposed by the Federal Vacancies Reform Act of 1998*, B-326480 (Comp. Gen), 2015 WL 1476519 (Mar. 30, 2015). The letter notifies the President that a period of service by the then Acting Inspector General violated the FVRA's time limits and, in conclusory fashion in a footnote, asserts that "[i]n the event a nomination is submitted to the Senate, the spring-back provision of the Vacancy Reform Act would allow service as acting Inspector General for the period that such nomination is pending." *Id.* at *2 n.5. This passing reference in a letter from counsel does not undermine the above plain reading of the FVRA's text.

Likewise, the Court does not find the string of cases relied upon by the Agency to be persuasive. Most importantly, none of them engage in the searching and thorough statutory analysis that Judge Schultz undertook. In *Hutchens v. Kijakazi*, No. 1:20-cv-1124, 2021 WL 5834409, at *7 (M.D.N.C. Dec. 9, 2021), the court relied on the unpersuasive OLC Opinion in finding that the statute includes a spring-back provision. *Brian D.*, 2022 WL 179540, at *15. The court in *Patterson v. Berryhill*, No. 2:18-cv-00193, 2018 WL 8367459, at *1 (W.D. Pa. June 14, 2018), also did not analyze the statutory text, and subsequent cases have

overwhelmingly referred back to *Patterson* without independent analysis. *Brian D.*, 2022 WL 179540, at *15 (citing *Heins v. Saul*, No. 19-cv-2043, 2020 WL 6052583, at *21 n.18 (N.D. Iowa June 11, 2020); *Reuter v. Saul*, No. 19-cv-2053, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020); *Austin v. Saul*, No. 19-cv-3017, 2020 WL 5229540, at *16 n.7 (N.D. Iowa May 12, 2020); *Marion v. Saul*, No. 19-cv-76, 2020 WL 2482124, at *26 n.17 (N.D. Iowa Apr. 21, 2020)). And the *Brian D.* court correctly points out that other judicial opinions, including those of other Circuit Courts, "simply do not address the statutory interpretation of § 3346(a)(2)." *Id.* (discussing *Probst v. Comm'r*, 980 F.3d 1015, 1024 (4th Cir. 2020); *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 544 (6th Cir. 2020); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 159 (3rd Cir. 2019)).

Because the Court has concluded that the plain language of the statute did not allow Ms. Berryhill to take up the position as Acting Commissioner upon Mr. Saul's nomination, it concludes, as did the *Brian D.* court, that resort to legislative history is unnecessary. *Id.* at *14. One argument raised by the Agency on this point merits discussion. Even if consideration of legislative history were required, the Court concludes that the 1998 Senate Report cited by the Agency regarding the FVRA bill does not support a "spring-back" reading of § 3346(a)(2) as adopted because the proposed language for inclusion in § 3348 was not included in the final text of the FVRA. As Judge Schultz explained:

> [T]he Senate Report shows that the Senate considered allowing an officer who had previously acted as Commissioner to return to acting service upon a nomination to the Senate, however Congress chose not to include such language in the final, enacted version of the FVRA. Certainly, the original language of § 3348 demonstrates that if Congress had intended the FVRA to contain a spring-back provision they were able to craft such language to clearly and unambiguously express that intent. At best the reliance on the Senate

Report illustrates the folly of attempting to discern legislative intent from
statements made during the legislative process.

*Id.* at *14–15.

Finally, the Court notes that some commentators have also suggested that

§ 3346(a)(2) operates as a "spring-back" provision, but these opinions are equally

unpersuasive. In a recent article discussing issues arising in the context of acting service in

PAS positions, the author states that "[i]f the 210- (or 300-) day limit with no nominations

runs out, and the President later submits a nomination, there can be no acting official in

between. But as soon as the nomination is pending, there can be an acting leader (the same

person as before or a new one)." O'Connell, *Actings*, 120 Colum. L. Rev. at 630–31 n.91. As

the precise issue before the Court here was not the focus of this article, Professor O'Connell

did not engage with statutory text in making this observation in a footnote. Instead, she

relied on another researcher's conclusion that "[t]he legislative history of the Vacancies Act

suggests that an acting officer may serve during the pendency of a nomination even if that

nomination is submitted after the 210-day period has run following the start of the vacancy."

Brannon, *supra* p. 4, at 14. But the Court concludes that such a reading of the legislative

history contradicts the plain language of the statute and cannot be used to alter the law's

unambiguous meaning.[10]

---

[10]   Ms. Brannon cites to Senator Fred Thompson's September 28, 1998 floor statement
concerning the FVRA:

> The acting officer may continue to serve beyond the [210] days if the
> President submits a nomination for that provision even if that occurs after the
> [210th] day. So at the [210]-day expiration, the President still has it within his
> sole discretion to make the nomination; just simply send the nomination up

*(footnote continued on next page)*

### C.       Conclusion

In light of the discussion above, the Court finds that Ms. Berryhill was not properly serving as the Acting Commissioner of the SSA in July 2018, and her purported ratification of the Agency's ALJs on July 16, 2018 was ineffective. Because ALJ Hebert was not properly appointed, he lacked authority to decide Mr. M's claim and his decision is vacated. Accordingly, Mr. M's disability claim is remanded to the Agency for a new hearing before a properly appointed ALJ other than the ALJ who presided over the first hearing. *Lucia*, 138 S. Ct. at 2055.

### ORDER

Based on the foregoing, **IT IS HEREBY ORDERED that**

1.      Plaintiff's Motion for Summary Judgment [ECF No. 13] is **GRANTED**;

2.      Defendant's Motion for Summary Judgment [ECF No. 16] is **DENIED**;

3.      The Commissioner's decision is **VACATED**; and

4.      This action is **REMANDED** for a new hearing before a properly appointed ALJ who is not the same ALJ that presided over Mr. M's first hearing.

**Let Judgment be entered accordingly.**

---

and the acting officer can come back and assume his duties.

Brannon, *supra* p. 4, at 14 n.131 (quoting 144 Cong. Rec. S11,022 (daily ed. Sept. 28, 1998)). Notably, Senator Thompson's remarks concerned the version of the FVRA bill that specifically included spring-back language in § 3348 that was not adopted as part of the FVRA's final text. If anything, the omission of this language from the final bill undermines an argument that Congress intended to include a spring-back provision in the statute. But regardless of whether any Senators *intended* to include such language, the final bill contains none.

Date: March 30, 2022

_s/Katherine Menendez_
Katherine Menendez
United States Magistrate Judge